# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

JUSTIN EDWARD LEWIS,

                Plaintiff,

v.

ETHAN GREEN,

                Defendant.

CASE NO. C17-0211-TSZ-MAT

REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Justin Lewis proceeds pro se and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. Defendant Ethan Green moves for summary judgment and dismissal with prejudice. (Dkt. 22.) Plaintiff did not respond to defendant's motion. The Court, having now considered defendant's motion, the papers filed in support, and the remainder of the record, concludes the motion for summary judgment should be GRANTED and this case DISMISSED with prejudice.

## BACKGROUND

Prior to his retirement in September 2017, defendant Green worked as a community corrections officer (CCO) for the Department of Corrections (DOC) in Kitsap County. (Dkt. 24, ¶4.) Plaintiff, who is currently incarcerated by the DOC, alleges Green violated his constitutional

REPORT AND RECOMMENDATION
PAGE - 1

rights by using the DOC community custody violations process to lock him up and keep him locked up. (Dkt. 6 at 3.) Plaintiff asserts that, for fifteen years, erroneous reports made to and documented by Green, including alleged death threats to Green and his family, have been used against him in DOC hearings, in court, and in his attempts to obtain housing and mental health treatment. He contends Green painted a "violent and reckless picture" of him, causing him to fear he will be killed by law enforcement, and that Green "use[s] his badge and job for his personal [well-being] and this is not fair." (*Id.*)

Green attests he last supervised plaintiff in or around 2010. (Dkt. 24, ¶3.) Green also provided assistance to DOC colleagues following plaintiff's July 7, 2016 arrest for attempting to rob a 7-11 convenience store in Bremerton. (*Id.*, ¶5.) At the time of that arrest, plaintiff was serving under at least two criminal judgments and sentences, and had absconded from community custody supervision. (Dkt. 23, ¶5.) Green utilized the police report addressing the July 2016 arrest to prepare a violation report that was later approved and signed by the assigned CCO. (*See* Dkt. 24, ¶6, Attach. A & B.) Green also communicated with Kitsap County officials to prevent plaintiff's premature release from Kitsap County Jail prior to resolution of the DOC violation proceedings. (*Id.*, ¶9.)

The report prepared by Green addresses two violations of conditions of supervision. (Dkt. 24-2 at 3.) In the July 7, 2016 incident, plaintiff "head-butted" a 7-11 employee and ultimately plead guilty to fourth degree assault. (*Id.*) A May 20, 2016 misdemeanor sentence for domestic violence harassment occurred after plaintiff's father called 9-1-1 because he feared plaintiff was going to punch him. The report describes plaintiff's prior history, including convictions for intimidating a public servant and second degree assault, intentional and causing substantial bodily harm; six serious infractions during confinement; and ten violations during periods of community

REPORT AND RECOMMENDATION
PAGE - 2

supervision. It describes the chronological supervision notes as revealing plaintiff's "periods of supervision in the community were a constant struggle for the assigned officers as well as the community mental health case managers tasked with supporting [him]," and states:

> I sum up LEWIS's last six to eight years in this manner in order to paint a picture of a habitual offender and a persistent violator. His first reaction to not getting his way is to become verbally and physically threatening by using his physical size to intimidate. I have attached several pages of case notes with examples of him threatening a number of DOC staff. In one of his verbal tirades he threatens harm to the assigned CCO, his wife, mother, grandmother and children.

(*Id.* at 3-4.) An attachment to the report identifies Green as the assigned CCO previously threatened by plaintiff. (*Id.* at 16.) The report also describes plaintiff as an "extraordinarily dangerous man[,]" whose "risk in the community seems to be escalating." (*Id.* at 4.) The report recommends all available time be revoked and plaintiff returned to prison, with any sanction time to be served consecutive to any other matter.

Plaintiff was taken back into custody after his July 2016 arrest and, at the time of filing this lawsuit in February 2017, was incarcerated at the Monroe Correctional Complex Special Offender Unit. (*See* Dkt. 4 at 2.) Following a July 2017 release to community custody, plaintiff failed to report to his assigned CCO. (Dkt. 14, ¶¶3-4.) He was arrested in August 2017 and, since that time, has been incarcerated at either the Kitsap County Jail or in a DOC facility. (Dkt. 23, ¶7.)

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the

REPORT AND RECOMMENDATION
PAGE - 3

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). In opposing the motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). The nonmoving party must set forth specific facts demonstrating a genuine issue of fact for trial, *see* Fed. R. Civ. P. (c)(1), and must present significant and probative evidence to support his or her claims, *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all inferences in favor of the nonmoving party. *Id.*

Defendant Green argues the statute of limitations precludes plaintiff's suit for any alleged actions during the time he served as plaintiff's assigned CCO, and that plaintiff fails to demonstrate any action within the limitations window deprived plaintiff of a constitutionally protected right. Defendant also asserts his entitlement to qualified immunity. For the reasons set forth below, the Court finds defendant entitled to summary judgment.

A.  <u>Statute of Limitations</u>

Federal courts apply the forum state's personal injury statute of limitations to 42 U.S.C. § 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). A three year statute of limitations applies in Washington. RCW § 4.16.080; *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). A § 1983 action accrues and the statute of limitations begins to run when a plaintiff knows or has reason to know of the injury which is the basis of his or her action. *Bagley v. CMC Real Estate Corp.*, 925 F.2d 758, 760 (9th Cir. 1991).

Green attests that, prior to his involvement in 2016, he had "not supervised Mr. Lewis since

at least 2010, if not earlier." (Dkt. 24, ¶3.) Chronological notes attached to the 2016 violation report, although far from complete, reflect Green's involvement with plaintiff's community custody supervision as late as February 1, 2011. (Dkt. 24-2 at 13-16.) Plaintiff did not take the opportunity to refute Green's statute of limitations argument, and the original and amended complaints contain no more than conclusory assertions as to any ongoing involvement by Green in plaintiff's supervision. At best, the facts before the Court provide a basis for timely allegations against Green in relation to plaintiff's July 2016 arrest. The Court, accordingly, agrees with defendant that plaintiff is time-barred from pursuing claims against Green prior to that date.

B. <u>Plaintiff's Allegations</u>

In order to sustain a 42 U.S.C. § 1983 claim, a plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A plaintiff must allege facts showing how defendant caused or personally participated in causing the harm alleged in the complaint. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633.

A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or failing to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or

reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44. Supervisory personnel may not be held liable for actions of subordinates under a theory of vicarious liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). *See also City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

Plaintiff alleges Green violated his constitutional rights under the Eighth, Fifth, Thirteenth, and Fourteenth Amendments. However, plaintiff fails, as a general matter, to provide sufficient explanation or factual support as to how such violations occurred. Plaintiff, for example, asserts Green utilized the DOC community custody violations process to keep him incarcerated, and used erroneous reports against him in DOC hearings, in court, and in relation to housing and mental health treatment. (Dkt. 6 at 3.) His allegations as to the use of erroneous reports or other improper acts are no more than conclusory and insufficient to prevent summary judgment. *See Leer* 844 F.2d at 634. Plaintiff, moreover, does not and cannot dispute the fact that, as a convicted felon under supervision by the DOC, he was subject to the DOC community custody violations process and to consequences, including incarceration, if he was found to have violated the terms of his supervision.

Nor does plaintiff set forth facts supporting a constitutional violation related specifically to the July 2016 arrest. Plaintiff appears to object to the way in which he is depicted in the violation report prepared by Green, and presumably disagrees with the report's conclusions and recommendations. However, the content of the violation report is supported by the July 2016 police report, the resulting Judgment and Sentence from Kitsap County Superior Court, and the attached supervision case notes. (*See* Dkt. 24-1 and 24-2.) There is no dispute that the conduct at issue in the report included, *inter alia*, an arrest for attempted robbery and a fourth degree assault conviction, a domestic violence misdemeanor, and plaintiff's history of criminal activity, multiple

infractions during confinement, and numerous community custody violations. While plaintiff did face consequences as a result of the report Green drafted, he fails to show those consequences stemmed from any unconstitutional conduct on the part of Green, rather than as a result of plaintiff's own unlawful or otherwise improper conduct.

Also, while Green did assist in drafting the violation report and communicated with Kitsap County officials, he attests he did not make decisions on whether notices of violation should proceed against plaintiff, did not preside over or represent DOC community corrections at the proceedings, did not find plaintiff guilty or enter a sanction against him, and was not involved in decisions associated with plaintiff's receipt of mental health services. (Dkt. 23, ¶8.) Plaintiff does not offer and the Court does not find any basis for disbelieving these assertions, or for establishing the casual link necessary to support a claim against Green.

Plaintiff, in sum, fails to show he suffered a violation of his constitutional rights or that Green caused any such violation. His claims against Green should be dismissed.[1]

## CONCLUSION

For the reasons explained above, the Court recommends defendant's motion for summary judgment (Dkt. 22) be GRANTED and this case DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect

---

[1] Having found as such, the Court finds no need to address defendant's qualified immunity argument.

REPORT AND RECOMMENDATION
PAGE - 7

your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 23, 2018**.

DATED this 26th day of February, 2018.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 8